**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                                               5:26-cr-00112 (BKS)

v.

LUCAS THOMAS PEREIRA,

                         Defendant.

**Appearances:**

*For the United States of America:*
Kevin Cheung
Assistant United States Attorney
Office of the United States Attorney
15 Henry Street, Room 304
Binghamton, New York 13901

*For Defendant Lucas Thomas Pereira:*
Eric Schillinger
Federal Public Defender
Courtenay McKeon
Assistant Federal Public Defender
Office of the Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

On February 19, 2026, Defendant Lucas Thomas Pereira was charged in a criminal

complaint with eluding examination or inspection by immigration officers, in violation of 8

U.S.C. § 1325(a)(2). *See United States v. Pereira*, No. 26-mj-00039, Dkt. No. 1 (N.D.N.Y. Feb.

19, 2026). Defendant filed a motion to dismiss the complaint arguing, as relevant here, that: (1) 8

U.S.C. § 1325(a)(2) is not a continuing offense; and (2) the statute of limitations bars his prosecution. *Pereira*, Dkt. No. 14-1, at 3–8. The Government opposed the motion. *Id.*, Dkt. No. 17. United States Magistrate Judge Miroslav Lovric granted Defendant's motion and entered judgment dismissing the criminal complaint. *Id.*, Dkt. Nos. 18, 19; *see also id.* Minute Entry (Apr. 2, 2026). The Government appealed pursuant to Fed. R. Crim. P. 58(g)(2). *Id.*, Dkt. No. 20. The appeal is fully briefed. (Dkt. Nos. 5, 6). For the reasons that follow, the judgment is affirmed.

## II.    FACTS

According to the affidavit in support of the criminal complaint, on February 18, 2026, Border Patrol Agents encountered Defendant during a traffic stop in Black River, New York, "located approximately 35 driving miles from the U.S./Canadian border." *Pereira*, Dkt. No. 1, at 2–3. Defendant admitted to the agents that he was a citizen of Brazil, that he did not have permission to enter the United States, that he entered the United States "by crossing the southern border in 2016 and was not inspected or examined by immigration officers." *Id.* Dkt. No. 1, at 3.

## III.    DISCUSSION

### A.    Legal Standard

Whether a statutory violation constitutes a continuing offense is a question of law that the Court reviews de novo. *United States v. Green*, 897 F.3d 443, 448 (2d Cir. 2018); *see United States v. Alfonso*, 143 F.3d 772, 775 (2d Cir. 1998) ("Because the district court's dismissal of the indictment raises questions of law, our review is de novo." (citing *United States v. Morgan*, 51 F.3d 1105, 1110 (2d Cir. 1995)).

### B.    Continuing Offense

The statute of limitations for prosecuting an offense under 8 U.S.C. § 1325(a)(2) is five years, 18 U.S.C. § 3282(a), and "runs from the moment the offense is completed." *Green*, 897

F.3d at 448 (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)). "The time at which a crime is 'complete' depends largely on the nature of the crime." *United States v. Eppolito*, 543 F.3d 25, 46 (2d Cir. 2008). "Some crimes are 'instantaneous'; others are 'continuing.'" *Id.* (quoting *Toussie*, 397 U.S. at 122). In general, a "continuing offense" is "one that involves a prolonged course of conduct; its commission is not complete until the conduct has run its course." *Id.* (quoting *United States v. Rivera–Ventura*, 72 F.3d 277, 281 (2d Cir. 1995)). Thus, if a violation of § 1325(a)(2) is a continuing offense, as the Government argues, the statute of limitations did not begin to run when Defendant entered without inspection in 2016, but instead began to run when "Pereira was arrested by BPA on February 18, 2026." (Dkt. No. 5, at 11).

"[A] crime is not a continuing offense 'unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *Green*, 897 F.3d at 448 (quoting *Toussie*, 397 U.S. at 115)); *see also Rivera–Ventura*, 72 F.3d at 281 ("A 'continuing offense' is, in general, one that involves a prolonged course of conduct; its commission is not complete until the conduct has run its course."). "Traditional examples of 'continuing offenses' include conspiracy, escape from federal custody, kidnapping, and crimes of possession." *United States v. Motz*, 652 F. Supp. 2d 284, 293 (E.D.N.Y. 2009) (citing *United States v. Rivlin*, No. 07-cr-524, 2007 WL 4276712, at *2, 2007 U.S. Dist. LEXIS 89323, at *6 (S.D.N.Y. Dec. 5, 2007). "Each of these crimes, by their nature, continue after the offense is initially committed. For example, a defendant who escapes from federal custody continues to violate 18 U.S.C. 751(a) until he is apprehended." *Motz*, 652 F. Supp. 2d at 293–94.

Here, the Government argues that both the language of § 1325(a)(2) and the nature of the crime, which, it contends, is akin to "escape," support a conclusion that a violation of §

1325(a)(2) is a continuing offense. (Dkt. No. 5, at 11–13). Specifically, the Government asserts that "the word 'elude,' . . . has long been understood to mean much the same as the word 'escape,'" (Dkt. No. 5, at 12 (citing *Websters New International Dictionary* 713 (1st ed. 1930)), which, it points out, the Supreme Court has found to be a continuing offense, (*id.* at 12–13 (citing *United States v. Bailey*, 444 U.S. 394, 399 (1980)). It further asserts that "elude" can be read two ways: "[a] person may elude something once, at a specific place and moment in time (i.e., to escape by stratagem), or continuously elude an ongoing obligation (i.e., to escape discovery or to remain undiscovered)," and that "the plain meaning of 'eludes' . . . encompasses both the initial act of avoiding inspection at the moment the alien crosses the border and the act of continuing to avoid inspection." (Dkt. No. 5, at 14). Defendant argues that, by its terms, § 1325(a)(2) describes an offense that is complete when an alien "avoids the examination or inspection process through the port of entry." (Dkt. No. 6, at 3).

The Second Circuit has not considered whether a violation of § 1325(a)(2) is a continuing offense, but every court that has considered this issue (with one exception)[1] has found that it is not. *See United States v. Cavillo-Rojas*, 510 F. App'x 238, 249 (4th Cir. 2013) ("[A] § 1325(a) offense is completed at the time of the defendant's illegal entry, and the statute of limitations begins running at that point."); *United States v. Corrales-Vazquez*, 931 F.3d 944, 948 (9th Cir. 2019) ("Taking into account the statutory text and context, we reject the government's reading of § 1325(a)(2) and hold that the crime of 'elud[ing] examination or inspection by immigration

---

[1] In *United States v. Espinoza-Cabrera*, No. 26-po-00161, Dkt. No. 5 (N.D.N.Y. Feb. 12, 2026) and *United States v. Tenecela-Aguaiza*, No. 26-po-162, Dkt. No. 5 (N.D.N.Y. Feb. 12, 2026), which were related cases, United States Magistrate Judge Gary L. Favro found § 1325(a)(2) was a continuing offense for venue purposes and that the defendants' prosecution in the Northern District of New York, where they were apprehended was proper, even if they had eluded examination or inspection in Florida and Texas, respectively. However, these decisions were subsequently reversed by United States District Judge Anne M. Nardacci. *United States v. Espinoza-Cabrera*, No. 8:26-cr-00062, 2026 WL 1161551, at *4, 2026 U.S. Dist. LEXIS 95677, at *13 (N.D.N.Y. Apr. 27, 2026); *United States v. Tenecela-Aguaiza*, No. 8:26-cr-00061, 2026 WL 1160623, at *4, 2026 U.S. Dist. LEXIS 95680, at *13 (N.D.N.Y. Apr. 27, 2026).

officers' can be committed only where and when examinations or inspections take place—at open ports of entry."); *United States v. Rincon-Jimenez*, 595 F.2d 1192, 1194 (9th Cir. 1979); *United States v. De La Cruz-Rodriguez*, No. 25-mj-134, 2026 WL 1440146, at *4, 2026 U.S. Dist. LEXIS 114697, at *9 (D. Vt. May 20, 2026) (addressing venue and observing that "[t]he plain language of § 1325(a)(2) does not evince an intent to create a continuing offense")[2]; *Tenecela-Aguaiza*, 2026 WL 1160623, at *4, 2026 U.S. Dist. LEXIS 95680, at *13 ("[T]here is no reason to infer that Congress intended for Section 1325(a)(2) to be a continuing offense.") (venue); *Espinoza-Cabrera*, 2026 WL 1161551, at *4, 2026 U.S. Dist. LEXIS 95677, at *13 (same); *United States v. Guzman Tejeda*, No. 1:25-cr-10454, 2026 WL 1005634, at *9, 2026 U.S. Dist. LEXIS 83173, at *25 (D. Mass. Apr. 6, 2026) (considering venue argument and concluding that "the Government has not put forth any persuasive argument that § 1325(a)(2) is a continuing offense"); *United States v. Morales-Barajas*, No. 2:26-mj-00224, 2026 WL 1208702, at *10, 2026 U.S. Dist. LEXIS 99196, at *26 (S.D. Tex. Apr. 13, 2026) (finding "the offense of eluding inspection or examination under 8 U.S.C. § 1325(a)(2) is not a continuing offense" and that the prosecution was time-barred); *United States v. Cuadra Soto*, No. 25-mj-3267, 2026 WL 123220, at *7, 2026 U.S. Dist. LEXIS 8740, at *17 (D. Neb. Jan. 16, 2026)

---

[2] The issue of whether a crime is a "continuing offense" arises in both the statute of limitations and venue context. The analyses do differ, *see United States v. Reitmeyer*, 356 F.3d 1313, 1323 (10th Cir. 2004) (distinguishing "the 'continuing offense' analysis for venue purposes," which focuses on the applicable venue statute and "whether the defendant began, continued, or completed the offense in more than one geographic location," from the "continuing offense" analysis for statute of limitations purposes, which applies the principles articulated in *Toussie*); *see also United States v. Dunne*, 324 F.3d 1158, 1166 (10th Cir. 2003). But courts have found that "the two concepts are clearly related," *Dunne*, 324 F.3d at 1166 (10th Cir. 2003) (citing *United States v. Hernandez*, 189 F.3d 785, 790 (9th Cir.1999)), and have looked to cases addressing continuing offenses in both contexts for guidance, *see*, *e.g.*, *United States v. Smith*, 198 F.3d 377, 384 (2d Cir. 1999) (considering cases addressing "continuing offenses for purposes of statutes of limitations" in evaluating whether a Hobbs Act violation was a continuing offense for purposes of venue); *United States v. Cartagena*, No. 24-cr-516, 2025 WL 1456097, at *11, 2025 U.S. Dist. LEXIS 96934, at *32–33 (S.D.N.Y. May 21, 2025) (relying on continuing offense cases in venue context in evaluating extortion statute of limitations (citing, inter alia, *Smith*, 198 F.3d at 384)). Accordingly, the Court has cited both venue and statute of limitations cases in evaluating whether § 1325(a)(2) is a continuing offense, remaining mindful of the requisite *Toussie* analysis.

(finding venue in Nebraska improper because the defendant crossed into the United States "somewhere in Texas" and because "the statutes do not support finding an alien is subject to an ongoing, continuing obligation to report for immigration inspection pursuant to section 1325 after they illegally enter the country"); *see also United States v. Vega*, No. 25-mj-00399, 2025 WL 3558747, at *3, 2025 U.S. Dist. LEXIS 257273, at *7 (D. Me. Dec. 12, 2025) (rejecting the government's argument that § 1325(a)(2) is a continuing offense, explaining that "[t]he obligation to submit to 'examination' and 'inspection' at the time of entry as required by § 1325(a) cannot reasonably be construed to extend to an encounter with a border patrol agent months or years after entering the United States"). As discussed below, this Court reaches the same conclusion.

### C.    Statutory Text

To determine whether a violation of § 1325(a)(2) is a continuing offense, the Court first considers the statute's text, *see Flowers Foods, Inc. v. Brock*, No. 24-935, 608 U.S. —, 2026 WL 1485669, at *3, 2026 U.S. LEXIS 2297, at *8 (U.S. May 28, 2026) ("Start with the statutory text."), and its "plain meaning, if it has one," *United States v. Bulloch*, 165 F.4th 676, 682 (2d Cir. 2026) (quoting *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)). "The plain meaning 'does not turn solely on dictionary definitions of [the statute's] component words,' but is also determined by 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) (quoting *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion)); *see also Bulloch*, 165 F.4th 676 ("In looking at a statute's plain meaning, we also must consider the context in which the statutory terms are used, as we do not . . . construe statutory phrases in isolation; we read statutes as a whole." (quoting *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir. 2022)). "Due respect for the prerogatives of Congress in defining federal crimes prompts

restraint in this area, where [courts] typically find a narrow interpretation appropriate." *Bulloch*, 165 F.4th at 682 (quoting *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012)).

"If the statutory language is unambiguous, the inquiry ends there." *Id.* at 683. "If [the Court] find[s] the statutory provision ambiguous, however, '[it] then turn[s] to canons of statutory construction for assistance in interpreting the statute.'" *Rowland*, 826 F.3d at 108 (quoting *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 (2d Cir. 2015)). The Court "resort[s] to legislative history only if, after consulting canons of statutory [construction], the meaning remains ambiguous." *Rowland*, 826 F.3d at 108.

Section 1325(a) states, in relevant part, that:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall [be guilty of an offense].

8 U.S.C. § 1325(a). Because the relevant phrase –"eludes examination or inspection by immigration officers"– "'has remained unchanged' since it was first used in 1929, it 'presumptively retains its original meaning.'" *Corrales-Vazquez*, 931 F.3d at 948 (quoting *Whitfield v. United States*, 574 U.S. 265, 267 (2015)). In *Corrales-Vazquez*, the Ninth Circuit reviewed historical definitions of "the verb 'elude'" and concluded that "[i]n 1929, as today," it "was more commonly used to mean 'avoid slyly, by artifice, stratagem, or dexterity,' or 'escape from in a covert manner.'" 931 F.3d at 948 (first quoting *Webster's New International Dictionary* 713 (1st ed. 1930); then citing *Concise Oxford Dictionary of Current English* 368 (2d ed. 1929); then citing *Oxford English Dictionary 97* (1st ed. 1933); then citing *Webster's New Collegiate Dictionary* 267 (6th ed. 1951); then citing *Webster's New World College Dictionary* 455 (2d ed. 1970); and then citing *Webster's Third New International Dictionary* 738 (2002)).

Relying on this definition, the Ninth Circuit explained that "[t]o 'elude' something would not usually mean to simply avoid it—the avoidance generally contemplates some form of 'escape,' whether through quickness or cunningness," *id.* at 949 (quotation marks and alterations omitted), and that "eluding" would include, "for example, an alien who hides in the trunk of a vehicle passing through a port of entry, or an alien who crosses through a port of entry on foot and then sneaks by the officers conducting inspections or examinations" but "would not include an alien who crosses the border miles away from any place" where an inspection or examination would occur, i.e., at a port of entry. *Id.* at 949.

The Government does not dispute the Ninth's Circuit's definition of "eludes"; it contends instead that the definition is more expansive and is a synonym for "escapes," which, it notes, the Supreme Court has found to be a continuing offense. (Dkt. No. 5, at 12–13 (citing *United States v. Bailey*, 444 U.S. 394, 413 (1980)). But unlike an alien who eludes the obligation to undergo examination and inspection by immigration officer, which arises upon arrival at a port of entry, an escaped prisoner is a fugitive, absent from lawful custody or a term of confinement previously imposed. *See United States v. Michelson*, 559 F.2d 567, 570 (9th Cir. 1977) (explaining that "the inmate's departure . . . does not absolve his continued absence from custody" and "does not commute the sentence previously imposed"); *see also De La Cruz-Rodriguez*, 2026 WL 1440146, at *3 (rejecting the government's attempt to analogize eluding examination or inspection to escape, explaining that "prisoners have an ongoing obligation to remain in prison and therefore continue to evade that obligation until they return to prison").

The Government attempts to overcome this difference by arguing that like a prisoner with an ongoing obligation to serve a court-imposed sentence, an alien who eludes examination or inspection has an "an ongoing obligation" to undergo examination or inspection. (Dkt. No. 5, at

8

14). Citing § 1225, the Government asserts that because "immigration officers have an ongoing duty to inspect illegal aliens, it stands to reason that an illegal alien may continuously elude inspection, even after the specific moment at which he enters the country." (Dkt. No. 5, at 18); *see* 8 U.S.C. § 1225(a)(3) ("All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."). But even if an immigration officer's obligation to inspect "applicants for admission" is mandatory, the Government fails to show that mandatory is synonymous with continuous, nor does the Government point to any language in § 1225(a)(3) that would suggest an alien has an ongoing obligation to report for inspection. *See Cuadra Soto*, 2026 WL 123220, at *6, 2026 U.S. Dist. LEXIS 8740, at *15 (finding § 1225(a) "merely authorizes immigration officers to conduct inspections. It does not require aliens to report to the nearest immigration officer for inspection such that they are continually eluding inspection by failing to report"); *De La Cruz-Rodriguez*, 2026 WL 1440146, at *3, 2026 U.S. Dist. LEXIS 114697, at *8 (same).

The language "eludes examination or inspection by immigration officers," 8 U.S.C. § 1325(a)(2), instead suggests that the duty is "triggered when an immigration officer encounters" an alien who is an "applicant for admission or otherwise seeking admission." *Morales-Barajas*, 2026 WL 1208702, at *5, 2026 U.S. Dist. LEXIS 99196, at *14. Indeed, read together, § 1325(a)(2) and § 1225(a)(3) are consistent with the proposition that the inspection requirement arises sporadically rather than continuously—in other words, that there are times and places when an alien is subject to inspection, such as upon entry. This reading also comports with the "the plain-sense use of the term ['eludes,' which] suggests that there must actually have been *something* to elude: an inspection or examination to which the alien was at risk of being called

upon to undergo." *Morales-Barajas*, 2026 WL 1208702, at \*5, 2026 U.S. Dist. LEXIS 99196, at \*14–15 (emphasis added); *see also Corrales-Vazquez*, 931 F.3d at 949 (explaining that the obligation to undergo inspection or examination arises "at a time and place" where "those processes occur," namely "at open and operating ports of entry").

Nor is the Government's more expansive definition plausible when reading § 1325(a)(2) in its immediate context, between §§ 1325(a)(1) and (3), or when reading it in its "place in the overall statutory scheme," between §§ 1324 and 1326. *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quotation marks omitted). Section 1325(a) lists three offenses: entry at a time or place other than as designated, § 1325(a)(1); eluding inspection and examination by immigration officers, § 1325(a)(2); and entry by false representation, § 1325(a)(3). Thus, § 1325(a)(2) is situated between two entry-related offenses, neither of which is continuing and both of which, as entry offenses, support the Court's narrower reading of "eludes" as limited to the time and place of inspection or examination at a port of entry. *See*, *e.g.*, *United States v. Cores*, 356 U.S. 405, 409 n.6 (1958) (noting that "crimes of illegal entry set out in," inter alia 8 U.S.C. § 1325, "are not continuing ones, as 'entry' is limited to a particular locality and hardly suggests continuity"); *Rivera-Ventura*, 72 F.3d at 281 ("The offense of illegal entry or illegal attempt is normally uncomplicated and is complete as soon as the entry or attempt is made."). In addition, because both subsections "are entry-based offenses related to conduct occurring at the border," interpreting "§ 1325(a)(2) to permit a prosecution for 'eluding examination or inspection' in a district and at a time unconnected to the unlawful entry itself results in incongruity among the subsections of the statute." *De La Cruz-Rodriguez*, 2026 WL 1440146, at \*4, 2026 U.S. Dist. LEXIS 114697, at \*11.

10

The Government argues that "[o]ne may 'elude' an examination or inspection where such examinations or inspections occur, like an open port of entry, or one may elude an examination or inspection by avoiding the location at which such examinations and inspections occur. The effect is the same. It would make no sense to criminalize one and not the other." (Dkt. No. 5, at 13). But Congress did criminalize the other: § 1325(a) makes it a crime to "enter[] or attempt[] to enter the United States at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1). Thus, not only would the Government's broad reading render § 1325(a)(1) superfluous, *see Corrales-Vazquez*, 931 F.3d at 950 ("If, as the government argues, merely crossing into the United States without examination or inspection violates § 1325(a)(2), regardless of time or place, then much of the highly specific language in § 1325(a)(1) would be superfluous—any alien who 'enters . . . the United States at any [non-designated] time or place' under § 1325(a)(1) would also be guilty of 'elud[ing] examination or inspection' under § 1325(a)(2)."), but it would also violate the "related principle of interpretation 'that general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment.'" *Id.* at 950–51 (quoting *Bloate v. United States*, 559 U.S. 196, 207–08 (2010)). Indeed, the "more cohesive reading of the statute indicates that the 'other than as designated by immigration officials' language found in (a)(1) is only necessary to differentiate this conduct from the conduct described in (a)(2) and (a)(3), which must occur at a designated port of entry." *Guzman Tejeda*, 2026 WL 1005634, at *5, 2026 U.S. Dist. LEXIS 83173, at *13.

Reading § 1325(a)(2) in the context of §§ 1324 and 1326 also supports a narrow definition of "eludes." Both provisions contain sections with language that constitutes or describes a continuing offense. For example, § 1324(a)(2) states that "[a]ny person who,

11

knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever," shall be guilty of an offense. 8 U.S.C. § 1324(a)(2). Courts have found the "brings to" language signifies a continuing offense because the conduct may continue even after crossing the border. *See United States v. Lopez*, 484 F.3d 1186, 1193 (9th Cir. 2007) (holding that the "'brings to' offense [of 8 U.S.C. § 1324 (a)(2) ] is a continuing one"); *see also United States v. Covarrubias*, 179 F.3d 1219, 1225 (9th Cir. 1999) (holding that "[t]he federal crime of transporting illegal immigrants [is] a continuing offense; it [remains] in progress as long as the defendants [are] transporting [aliens]"), *abrogated on other grounds by Texas v. Cobb*, 532 U.S. 162, 168 (2001). And Section 1326(a)(2) states that "any alien who has been denied admission, excluded, deported, or removed . . . enters, attempts to enter, or is at *any time found in* the United States" shall be guilty of an offense. 8 U.S.C. § 1326(a)(2) (emphasis added). In *Rivera-Ventura*, 72 F.3d at 282, the Second Circuit explained that "[t]o the extent that § 1326(a) makes it a crime to be 'found in' the United States, that provision is the practical equivalent of making unlawful 'entry' a continuing offense until at least such time as the alien is located."[3] *Id.*

The Government argues that § 1325(a)(2)'s situation between provisions that contain continuing offenses, "suggest[s] that Congress believes that immigration crimes are generally of a 'continuing nature' unless . . . clear language to the contrary" is used. (Dkt. No. 5, at 18). This argument runs counter to the Supreme Court's direction that courts apply "the doctrine of continuing offenses . . . in only limited circumstances since . . . (t)he tension between the purpose

---

[3] However, the Second Circuit specified that it saw "no indication that Congress intended being 'found' itself to be treated as a continuing offense so that an alien whom the authorities have once taken into custody with knowledge of the illegality of his presence may be repeatedly deemed to have been 'found' at some later time or times." *Rivera-Ventura*, 72 F.3d at 282.

of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." *Toussie*, 397 U.S. at 115 (quotation marks omitted); *see also id.* at 114–15(explaining that purposes of a statute of limitations include protecting "individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time" and "encouraging law enforcement officials promptly to investigate suspected criminal activity"). The Court therefore declines to embrace the Government's suggestion that § 1325(a)(2) should be considered a continuing offense unless it contains explicit language "to the contrary." Such an approach would run counter to Supreme Court law and the well-settled principles that guide the evaluation of continuing offenses.

Whether § 1325(a)(2) is read in its immediate context, between two entry-related, non-continuing offenses, or viewed in the wider context of its surrounding provisions, which contain continuing offenses, the Court finds "eludes" unambiguously means eludes examination or inspection at a time and place where required, such as a port of entry. Accordingly, in the absence of "explicit language," the Court finds no ambiguity and that § 1325(a)(2) is not a continuing offense but is complete once a defendant has eluded examination or inspection.

### D.   Nature of the Offense

The Government next argues that even if the language of § 1325(a)(2) does not suggest a continuing offense, the nature of the offense shows that Congress must intend it to be treated as a continuing offense. (Dkt. No. 5, at 21). The Government's argument revolves around its contention that eluding examination or inspection is "much the same" as the crime of escaping prison. (Dkt. No. 5, at 21 (citing *United States v. Bailey*, 444 U.S. at 413)). As discussed above, even in the absence of explicit language, a crime may be treated as a continuing offense if "the nature of the crime involved is such that Congress must assuredly have intended that it be treated

13

as a continuing one." *Green*, 897 F.3d at 448 (quoting *Toussie*, 397 U.S. at 115). The Government further asserts that the word "escape" is contained the above definition of "elude" and that in *United States v. Bailey*, 444 U.S. 394, 399 (1980), the Supreme Court observed that although the statute did "not define the term 'escape,' courts and commentators are in general agreement that it means absenting oneself from custody without permission." *Bailey*, 444 U.S. at 407. In *Bailey*, the Supreme Court found "it clear beyond peradventure that escape from federal custody as defined in § 751(a) is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure" and explained that "[g]iven the continuing threat to society posed by an escaped prisoner, 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" 444 U.S. at 413 (quoting *Toussie*, 397 U.S. at 115)). The Court further noted that, in any event, "[b]ecause an escaped prisoner is, by definition, a fugitive from justice, the statute of limitations normally applicable to federal offenses would be tolled while he remained at large." *Id.* at 413 n.10 (citing 18 U.S.C. § 3290).

The Government points out that in *Bailey*, the Court used the word "eluded" in describing the prisoner's evasion of authorities following his escape and that the word escape is present in the definition of "eludes." 444 U.S. at 399 ("Respondent . . . had eluded the authorities for one month."). Given the otherwise vast differences between the crimes of escaping federal custody and eluding inspection or examination, this minor crossover in word use is not sufficient to show that the nature of the two crimes are analogous. Every moment a prisoner is a fugitive, the prisoner is in violation of § 751(a) because the prisoner is absent from lawful custody or confinement. *See United States v. Michelson*, 559 F.2d 567, 570 (9th Cir. 1977) (explaining that "the inmate's departure . . . does not absolve his continued absence from custody" and "does not

14

commute the sentence previously imposed"). In contrast, an alien who eludes inspection or examination does so by avoiding immigration officers at a time and place inspection or examination is required, such as at a port of entry. Indeed, as discussed *supra* Part III.C., the Government has not identified any authority suggesting that an alien is subject to an ongoing inspection or examination obligation. *See, e.g., United States v. Bozza*, 365 F.2d 206, 220 (2d Cir. 1966) (explaining, in the context of venue, there is a distinction "between a continuing offense which is held . . . to have been committed wherever the wrongdoer roamed, and [a] single act which occurs at one time and at one place in which only it may be tried") (internal quotation marks and citations omitted).

The Government next argues that the similarity of the risks to the public arising from a prisoner who has escaped federal custody and an alien who has eluded examination supports a finding that the crimes are of the same continuing nature. In *Bailey*, the Supreme Court recognized the "continuing threat to society posed by an escaped prisoner." 444 U.S. at 413. The Government asserts that aliens who have eluded inspection represent a "'continuing' threat to the American people" because inspection is required "to discover whether" an alien has engaged in or "will seek to engage in 'terrorist activity,' 'espionage,' [or] 'sabotage,'" or intends to "overthrow the U.S. government by force." (Dkt. No. 5, at 21 (citing 8 U.S.C. §§ 1182(a)(3), 1225(c)(1)). This assertion lacks merit. Under 18 U.S.C. § 751, a prisoner who escaped custody had already been subject to lawful arrest or conviction and sentence. In contrast, the threat posed by an uninspected alien is unknown and thus a matter of speculation. There is, therefore, no basis on which to conclude that a prisoner and an uninspected alien pose the same threat to society. Accordingly, the Court rejects the Government's argument that the nature of § 1325(a)(2) is that of a continuing offense. *Cuadra Soto*, 2026 WL 123220, at *6, 2026 U.S. Dist. LEXIS 8740, at

*14 ("[T]he Court is not inclined to find eluding inspection is a continuing offense in the absence of clear statutory language on the grounds that persons eluding immigration inspection pose a threat to society akin to the threat posed by escaped prisoners.").

### E.        Canon of Constitutional Avoidance

The Government's final argument concerns the interpretive canon of constitutional avoidance. (Dkt. No. 5, at 21–24). "Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). However, "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases." *Jennings*, 583 U.S. at 298. "Instead, the canon permits a court to 'choos[e] between competing plausible interpretations of a statutory text.'" *Id.* (quoting *Clark v. Martinez*, 543 U.S. 371, 381 (2005)).

The Government's argument centers on § 1325's venue provision, 8 U.S.C. § 1329, which allows prosecution "at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended." 8 U.S.C. § 1329. The Government argues that if § 1325(a)(2) is not a continuing offense, § 1329 would violate Article III and the Sixth Amendment of the Constitution because it would allow a defendant who eluded inspection or examination (i.e., completed the crime) in one state or district, but who was apprehended in another state or district, to be tried where apprehended, i.e., in a forum other than the one in which the crime was committed. (Dkt. No. 5, at 22).

"A defendant's right to be tried in the state and district in which the charged crime 'shall have been committed' is grounded" in Article III and the Sixth Amendment. *United States v. Davis*, 689 F.3d 179, 184–85 (2d Cir. 2012) (first quoting U.S. Const. art. III, § 2, cl. 3; and then

citing *id.* amend. VI). "The purpose of these provisions is to 'protect defendants from the bias and inconvenience that may attend trial in a forum other than one in which the crime was committed.'" *United States v. Calonge*, 74 F.4th 31, 34 (2d Cir. 2023) (quoting *United States v. Rowe*, 414 F.3d 271, 277 (2d Cir. 2005)).

Even if the Government is correct that § 1329 is constitutionally problematic because it would, by its terms, allow a defendant who eluded examination or inspection (completing the crime) in one state or district, to be tried where apprehended, even if it is in a different state or district, *Davis*, 689 F.3d at 184–85, its proffered interpretation of § 1325(a)(2) to resolve this issue, does not avoid the constitutional problem. It might resolve the issue as to § 1325(a)(2), but it would not resolve it as to § 1325(a)(1) (entry at a time or place other than as designated by immigration officers) or (a)(3) (entry using false or misleading representations). The Government does not dispute that §§ 1325(a)(1) and (a)(3) are complete at the time of entry. Thus, even if § 1325(a)(2) was an offense that continued until apprehension, rendering § 1329 constitutional as to that offense, § 1329 would still allow defendants to be tried for violations of §§ 1325(a)(1) and (a)(3) in states or districts other than those where the crimes were committed, in violation of Article III and the Sixth Amendment. *See Cuadra Soto*, 2026 WL 123220, at *4, 2026 U.S. Dist. LEXIS 8740, at *9 ("The implication from the Government's construction of the statute is that Congress set venue in an unconstitutional place for two of the three crimes articulated in section 1325.").

Courts have credited different explanations for § 1329's allowance for prosecution in the state or district where the crime occurred or in the state or district where the defendant was apprehended. In *Cuadra Soto*, after rejecting an identical argument regarding §§ 1325(a)(1), (2), and (3), the court concluded that "Congress must have intended to establish venue for all three

17

crimes in the place of apprehension." 2026 WL 123220, at *4, 2026 U.S. Dist. LEXIS 8740, at

*8. It found the "more persuasive construction is that the 'apprehension' portion of section 1329

exists because Congress was exercising its power to set venue for section 1325 crimes committed

outside the States, i.e., in United States territories." 2026 WL 123220, at *4, 2026 U.S. Dist.

LEXIS 8740, at *9 (citing Eric S. Fish & Doug Keller, Fabricating the Crime of Undocumented

Presence, 19–20, 50 (Nov. 14, 2025) (draft), https://ssrn.com/abstract=5750862). It explained

that:

> Under this interpretation, the district where the person is apprehended is the appropriate venue to prosecute someone who illegally entered a United States territory lacking a federal district court. All other prosecutions "may be instituted at any place in the United States at which the violation may occur." § 1329. Under this reading, no portion of section 1329 is unconstitutional.

2026 WL 123220, at *4, 2026 U.S. Dist. LEXIS 8740, at *9. In *Guzman Tejeda*, the court also

rejected the Government's arguments, but provided a different explanation regarding § 1329's

venue provision:

> From 1978 until just last year, the U.S. Department of Justice Office of Legal Counsel ("OLC") instructed that the specification of venue of § 1329 as it applies to § 1325 prosecutions "is unconstitutional since it authorizes prosecution in a district other than the district at or near the border where the inspection should have taken place." The OLC explained that the § 1329 venue provision "is merely an anomaly produced by inartful drafting" that cannot be reconciled with the requirements of the Constitution and directed that "as a constitutional matter . . . all prosecutions charging violations of § 1325 must be brought in the district where the offense was committed, i.e., where the alien entered the country or where the inspection station to which he was to have reported is located."

*Guzman Tejeda*, 2026 WL 1005634, at *8, 2026 U.S. Dist. LEXIS 83173, at *20–21 (internal

citations omitted) (citing Memorandum Opinion for the Assistant Attorney General, Criminal

Division, Re: Immigration and Nationality Act (8 U.S.C. § 1329)—Eluding Inspection—

18

Criminal Offense—Venue, 2 Op. O.L.C. 110, 110 (1978)). Whatever the explanation or correct reading, the Government's proffered reading of § 1325(a)(2) as a continuing violation is not supported by the interpretative canon of constitutional avoidance. If the canon is applied to interpret § 1325(a)(2) as an offense that continues until apprehension, prosecution in either the state or district where the alien first eluded examination or inspection, or in the state or district where the alien was arrested would be constitutional because the crime would have been committed in both venues. But this is not a plausible interpretation because it would not resolve the constitutional problem of allowing the prosecution of offenses under § 1325(a)(1) or (3) in a state or district other than the one where the crime was committed.[4] *See Clark*, 543 U.S. at 381 (describing constitutional avoidance as "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts").

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Court **AFFIRMS** the judgment of United States Magistrate Judge Miroslav Lovric dismissing the complaint.

**IT IS SO ORDERED.**

Dated: <u>June 15, 2026</u>
          Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[4] In any event, to the extent the Government's interpretation of § 1325(a)(2) would, in effect, expand the reach of the statute of limitations, it is not clear that invoking the canon of constitutional avoidance in this scenario would be proper. *See Davis*, 588 U.S. at 463 (explaining that "when presented with two 'fair alternatives,' [the] Court has sometimes adopted the narrower construction of a criminal statute to avoid having to hold it unconstitutional if it were construed more broadly" but that "no one before us has identified a case in which this Court has invoked the canon to expand the reach of a criminal statute in order to save it").